Hunter *v.* Jones, Appellant.
Hennigan *v.* Jones, Appellant.
Cione *v.* Jones, Appellant.

Argued January 5, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edgar R. Casper,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for appellants.

*Jerome H. Gerber,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, March 16, 1965:

Appellees are state employees who filed complaints in the Court of Common Pleas of Dauphin County, sitting as the Commonwealth Court, seeking mandamus. The requested relief was for an order which would direct the members of the Civil Service Commission to grant hearings with respect to appellees' contentions that their discharges from state employment

were discriminatory and therefore in contravention of certain provisions of the Civil Service Act.[1] Appellants-defendants are the three members of the Civil Service Commission. There is no dispute of fact in the case; the issue is one of statutory construction.

Prior to August 27, 1963, appellees held regular (non-probationary) status under executive civil service[2] in positions designated as professional or technical by the Executive Board of the Commonwealth. On that date, Act No. 520[3] became effective and appellees lost their regular status under executive civil service and acquired probationary status in the legislative (or classified) civil service system.[4] In December 1963, appellees were separated from the classified service upon being notified that their work was "unsatisfactory". The Civil Service Commission denied appel-

---

[1] The original statute was the Act of August 5, 1941, P. L. 752, and that Act has been amended a number of times, most recently by the Act of August 27, 1963, P. L. 1257, 71 P.S. §741.1 et seq. (Supp. 1964).

[2] Section 212 of the Act of August 5, 1941, P. L. 752, amended by Act of May 21, 1943, P. L. 516, §1, 71 P.S. §741.212, makes it possible for the services of the Civil Service Commission to be made available to governmental groups not otherwise subject to the Civil Service Act. The Executive Board of the Commonwealth has at various times directed certain governmental departments, boards and commissions to enter into agreements with the Commission. The coverage thus provided came to be known as "executive civil service".

[3] Act of August 27, 1963, P. L. 1257, 71 P.S. §741.1 et seq. (Supp. 1964) [hereafter, 1963 amendatory act].

[4] The 1963 amendatory act was designed to bring within the ambit of the classified (or legislative) civil service system employees who were previously covered only by the so-called executive system, a protection which could be withdrawn by executive action. But as a condition to this transfer, those who held "regular" (non-probationary) status in the executive system were required to assume probationary status in the classified (legislative) civil service system.

lees' requests for hearings on the theory that probationary employees in appellees' category lack any right of appeal, even if there is an allegation of discrimination.

In plaintiffs' mandamus actions the Commonwealth Court held that the Civil Service Act does permit appeals based on allegations of political discrimination, dismissed appellants' preliminary objections to its jurisdiction, and granted appellees' motions for summary judgments. The court ordered the Commission to hold public hearings in accordance with appellees' requests.[5] It is from these judgments that the present appeals have been taken.

In arguing for the reversal of these judgments, appellants cite the language of §28(c) of the 1963 amendatory act,[6] a section which concededly applies to appellees. The section provides that "any person serving such probationary period may, at any time within such period . . . upon written notification of unsatisfactory work . . . be separated from classified service without the right of appeal." Appellants would have us construe the phrase *"without the right of appeal"* so as to prohibit not only appeals based upon "unsatisfactory work", but also appeals based upon allegations of discrimination.

Appellees, on the other hand, urge that §28(c) does not negate the rights conferred by other sections of the Civil Service Act. They point to §951(b)[7] which provides that "any person who is aggrieved by an alleged violation of §905.1 of this act may appeal in writing to the commission within 20 calendar days of the al-

---

[5] 83 Dauph. 125 (1964).

[6] 1963 amendatory act, §28(c), 71 P.S. §741.1005(c) (Supp. 1964).

[7] Added by 1963 amendatory act, §27, 71 P.S. §741.951(b) (Supp. 1964).

leged violation." In turn, §905.1[8] provides: "No officer or employe of the Commonwealth shall discriminate against any person in recruitment, examination, appointment, training, promotion, retention, or any other personnel action with respect to the classified service because of political or religious opinions or affiliations because of labor union affiliations or because of race, national origin, or other non-merit factors."

It is clear that the plain language of §§951(b) and 905.1 is broad enough to confer upon appellees a right of appeal in the present case. This is especially apparent in light of §951(a)[9] which involves appeals to the Commission with respect to a different subject matter. The language of the latter section illustrates that where the Legislature intended to preclude appeals by persons who had not yet emerged from probationary status, it left no room for conjecture. Thus, only a "regular employe" (defined by §3(k)[10] as "an employe who has been appointed to a position in the classified service in accordance with this act after completing his probationary period") has standing to appeal matters within the scope of §951(a). In contrast, §951(b) contains no language which would preclude appeals by probationary employees. Even further, the subject matter of §951(b) encompasses discrimination against "any person"[11] with regard to "recruitment, examination, appointment, training, promotion, retention, or any other personnel action." Surely, the legislative designation, "any person", in the context and purpose of this enactment, is broad enough to include not only regular, but also probationary employees.

---

[8] Added by 1963 amendatory act, §25, 71 P.S. §741.905a (Supp. 1964).

[9] Added by 1963 amendatory act, §27, 71 P.S. §741.951(a) (Supp. 1964).

[10] 1963 amendatory act, §1, 71 P.S. §741.3(k) (Supp. 1964).

[11] The term is not specifically defined in the statute.

From an examination of the history and provisions of the 1963 amendatory act, there also emerges a legislative purpose to treat appellees in the same manner as other probationary employees previously covered by the classified system. As we have noted, before passage of the Act, the Executive Board of the Commonwealth had directed various departments, boards, and commissions to enter into agreements with the Commission to administer the provisions of the Civil Service Act with respect to the employees of such governmental agencies, thus creating what has come to be known as executive civil service. The effect of such action was to bring within the coverage of this particular form of civil service many state employees, including appellees, who had previously enjoyed no protection from dismissal with or without cause. The 1963 amendatory act expanded the classified (legislative) service so as to include employees previously under executive civil service, while at the same time conferring upon them probationary status irrespective of any regular status previously held in the executive system.

In the case of appellees, their status as probationary employees under the classified service is clearly established by two sections. Section 3(d)(13)[12] which defines classified service as including "all positions now existing or hereafter created in any department or agency under the Governor's jurisdiction which . . . were designated as professional or technical by the Executive Board of the Commonwealth on or before October 1, 1962 . . . ." Further, §28(a)[13] provides that "any person who [on August 27, 1963] held regular or probationary status in a position in the classified

---

[12] Added by 1963 amendatory act, §1, 71 P.S. §741.3(d)(13) (Supp. 1964).

[13] 1963 amendatory act, §28(a), 71 P.S. §741.1005(a) (Supp. 1964).

service, as defined in section 3(d)(13) . . . shall, except as hereinafter provided, serve the maximum probationary period authorized by section 603[14] as amended by this amendatory act . . . ."[15]

It is in the light of the general legislative purposes to treat those, including appellees, who were being incorporated into the classified system as probationary employees, and to permit appeals by any person aggrieved by violations of §905.1, that we must view appellant's contention that §28(c) deprives appellees of the benefits of §951(b). Nothing in the language of §28(c) compels such a conclusion, and the subject matter of that section is concerned with separation for unsatisfactory work and is therefore completely unrelated to the subject matter of §951(b) which provides for a hearing for any person alleging discrimination under §905.1. Furthermore, the language of §28(c) implements the legislative purpose to treat appellees and others being transferred into the legislative system in the same manner as other probationary employees in that the latter may also be separated by virtue of unsatisfactory work without the right of appeal.

Moreover, construction of §28(c) so as to preclude appeals under §951(b) in the present case would compel us to attribute to the Legislature an intention to deprive persons in appellees' category of the opportunity to have heard not only contentions as to political discrimination, but also as to claimed discrimination because of race, religion, national origins or labor af-

---

[14] Section 603, 71 P.S. §741.603 (Supp. 1964), in part, provides: "The probationary period for each class of position shall be prescribed in the rules of the commission and shall in no case be less than six months or more than eighteen months." (Footnote ours.)

[15] Significantly, the legislative intention to treat appellees in the same manner as others who were already probationary employees in the classified service is confirmed by this reference to §603, 71 P.S. §741.603 (Supp. 1964), which deals broadly with all such employees under the Civil Service Act.

filiation. In the absence of explicit language or of other convincing evidence of legislative purpose to the contrary, we may not conclude that the Legislature intended a result which would be contrary to the entire purpose of the merit system and which would negate its expressed disapproval of discriminatory considerations.

The court below aptly and convincingly noted: "There is no suggestion within . . . the 1963 amendatory act . . . that the legislature intended former executive civil service employes who were brought within the aegis of the classified service as employes with probationary status to have any fewer rights than those enjoyed by probationary employes historically under the classified service."[16]

Appellants contend that it is impossible to reconcile the rulings of the court below. The rulings are alleged to be contradictory in holding that although appellees may not appeal the "unsatisfactory work" determination of the appointing authority, nevertheless they are entitled to a hearing on the basis of alleged discrimination and to reinstatement if their dismissals are found to be based upon discriminatory factors. What the Act permits is for each appellee to challenge his dismissal by specifically reciting the basis underlying his claim of discrimination and thereafter factually substantiating that claim upon hearing. If the complainant cannot sustain his allegations of discrimination, then his dismissal must stand without any right of appeal as to the validity of the determination of unsatisfactory work performance. Furthermore, we must note that the suggested difficulty which appellants perceive in reconciling the provisions referred to would not be confined to appeals sought by persons in the category of appellees but would exist

---

[16] 83 Dauphin Co. Rep. at 134.

under the Civil Service Act with respect to all persons having probationary status.

We believe that the court below correctly interpreted the statutory provisions involved and that appellees' rights to mandamus are clear.

Judgments affirmed.