Herbert Shapiro, Appellant, *v.* Commonwealth of Pennsylvania, State Civil Service Commission, Appellee.

Argued January 11, 1974, before Judges KRAMER, WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Richard B. Sigmond,* with him *Leonard Spear* and *Meranze, Katz, Spear & Wilderman,* for appellant.

*Glenn Gilman,* Assistant Attorney General, with him *Michael Von Moschzisker,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, February 11, 1974:

This is an appeal from the order of the State Civil Service Commission, dated May 21, 1973, dismissing the appeal and sustaining the action of the Department of Public Welfare in the removal of appellant from his position as Medical Research Scientist III, probationary status, effective November 24, 1972. The real substantive issue to be decided is whether appellant was on probationary status or regular status at the time of his dismissal. The Commission determined that he was on probationary status and, therefore, fell under the provisions of Section 951(b) of the Civil Service Act, Act of August 5, 1941, P. L. 752, as amended, 71 P.S. §741.951(b). Under our Supreme Court's ruling in *Beard v. State Civil Service Commission,* 424 Pa. 146, 150, 225 A. 2d 543, 545 (1967), this placed the burden on appellant to prove that his dismissal was based on discrimination. "Unless he could prove this, the Commission had no authority to question the validity of the unsatisfactory work determination." We agree and must affirm.

Appellant entered the Commonwealth employ on November 18, 1968, on an emergency status under the provisions of Section 606 of the Civil Service Act, 71 P.S. §741.606. On December 28, 1968, he was moved to pro-

visional status under the provisions of Section 604, 71 P.S. §741.604. This Section provides for such appointments under special circumstances, but the appointment can only continue until an appropriate eligible list can be established, and in no event more than six months in any 12-month period. It prohibits successive provisional appointments. Nevertheless, in violation of this provision, appellant remained in the provisional status until he took and passed an examination given in "about May, 1972," the first examination given after his provisional appointment. Having passed the examination, he was given a probationary status on June 10, 1972, under the provisions of Section 603, 71 P.S. §741.603. This probationary status could cover a period of not less than six or more than 18 months. It was during this period that appellant was notified by letter dated November 8, 1972, effective November 24, 1972, that he was dismissed.

It is appellant's position that when he was retained in the provisional status beyond the six-month permissible period, he automatically moved into a regular status. We cannot agree. His continued employment was contrary to law, but there is no provision in the law to convert it to a regular status. During that period, he had a de facto status. Indeed, the Civil Service Act specifically provides in Section 604, 71 P.S. §741.604, "the acceptance of a provisional appointment shall not confer upon the appointee any rights of permanent tenure, transfer, promotion or reinstatement."

The legal status of a person who is held over beyond the six-month (formerly 90-day) period was carefully analyzed by the Attorney General of Pennsylvania in Official Opinion No. 120, dated May 29, 1958, appearing in the bound volumes of Official Opinions for 1958, at page 223. In that opinion, the Attorney General advised the Auditor General that such a situation was unlawful, and the Civil Service Commission had the

duty to hold examinations with dispatch. However, he advised that the employee had de facto status and should be paid. We agree with that well-reasoned opinion.

The only other question remaining is whether the Commission was justified in finding that appellant had not proven discrimination. Appellant offered his own testimony and that of two supporting witnesses that he was a qualified, cooperative employee, properly performing his duties. The Commonwealth offered the testimony of appellant's superiors who both testified that he was an unsatisfactory employee who failed to cooperate. Since there was testimony both ways, it was for the Commission to decide what testimony to accept. *Siegel v. Civil Service Commission*, 9 Pa. Commonwealth Ct. 256, 305 A. 2d 736 (1973). *Gibbs v. Civil Service Commission*, 3 Pa. Commonwealth Ct. 230, 281 A. 2d 170 (1971).

Appellant asserts that the Hearing Examiner precluded him from introducing relevant evidence and so conducted the hearing as to inhibit the proper presentation of his case. When the entire record is examined, we find that the actions of the Hearing Examiner, while not always in keeping with the highest tradition, and perhaps in some instances reprehensible, were, nevertheless, not of sufficient irregularity as to warrant a remand. Indeed, in several instances, the Hearing Examiner had to "step in" to separate counsel during verbal exchanges that were equally beyond the standards of professional conduct that can reasonably be expected from counsel.

Accordingly, we enter the following

ORDER

Now, February 11, 1974, the order of the State Civil Service Commission, dated May 21, 1973, dismissing the appeal and sustaining the action of the Department of Public Welfare, is affirmed.